# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER CHRISTOPHER NERI, | Case No. 1:21-cv-01235-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 11, 13, 14) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Alexander Christopher Neri ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1] For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF Nos. 6, 7, 8.)

## II.

## BACKGROUND[2]

On October 17, 2018, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning January 1, 2015,[3] due to attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, and autism spectrum disorder. (Admin. Rec. ("AR") 21, 93–94, ECF No. 9-1.)

Plaintiff's claim was initially denied on May 9, 2019, and denied upon reconsideration on August 21, 2019. (AR 109, 126.) On May 21, 2020, Plaintiff appeared telephonically for hearing, but the Administrative Law Judge William G. Reamon (the "ALJ") continued the hearing in order to permit Plaintiff to retain counsel. (AR 75–92.) On November 13, 2020, Plaintiff, represented by counsel,[4] appeared via telephonic conference for an administrative hearing before the ALJ. (AR 36–74.) Vocational expert ("VE") Susan Rowe also testified at the hearing. On December 14, 2020, the ALJ issued a decision denying benefits. (AR 18–35.) On June 9, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

Plaintiff initiated this action in federal court on August 13, 2021, and seeks judicial review of the denial of his application for benefits. (ECF No. 1.) The Commissioner lodged the administrative record on March 15, 2022. (ECF No. 9.) On May 2, 2022, Plaintiff filed an opening brief. (ECF No. 11.) On June 9, 2022, Defendant filed a brief in opposition. (ECF No. 24.) On June 24, 2022, Plaintiff filed a reply. (ECF No. 14.) The matter is deemed submitted.

///

///

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination. However, the Court will refer to the parties' briefings by their ECF pagination.

[3] While Plaintiff's complete medical history must be considered for purposes of his application, 20 C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335.

[4] Plaintiff was represented by attorney Melissa Proudian, of the Law Office of Melissa A. Proudian, for the administrative proceedings, and is currently represented by attorney Melissa Newel, of the Newel Law Firm. (See AR 21; ECF No. 11.)

1

**III.**

2

**LEGAL STANDARD**

3

**A.      The Disability Standard**

4

To qualify for disability insurance benefits under the Social Security Act, a claimant must

5

show he is unable "to engage in any substantial gainful activity by reason of any medically

6

determinable physical or mental impairment[5] which can be expected to result in death or which

7

has lasted or can be expected to last for a continuous period of not less than 12 months."   42

8

U.S.C. § 423(d)(1)(A).   The Social Security Regulations set out a five-step sequential evaluation

9

process to be used in determining if a claimant is disabled.   20 C.F.R. § 404.1520;[6] Batson v.

10

Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).   The five steps in the

11

sequential evaluation in assessing whether the claimant is disabled are:

12

13

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14

15

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

16

17

18

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

19

20

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

21

22

23

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

24

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

25

26

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

27

28

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1

**B.    Standard of Review**

2          Congress has provided that an individual may obtain judicial review of any final decision

3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4    determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5    the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6    Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7    the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8    405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9    evidence which, considering the record as a whole, a reasonable person might accept as adequate

10   to support a conclusion."   Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11   (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12   Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13   the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14   not high."   Biestek, 139 S. Ct. at 1154.   Rather, "[s]ubstantial evidence means more than a

15   scintilla, but less than a preponderance; it is an extremely deferential standard."   Thomas v.

16   CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17   citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19   454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20   falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

21   409 (2009).

22          Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25   Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

26   review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

5

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

### THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, December 14, 2020 (AR 23–30):

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since October 17, 2018, the application date.  (20 C.F.R. §§ 416.971 et seq.)

At step two, the ALJ determined Plaintiff has the following severe impairment: ADHD. (20 C.F.R. § 416.920(c).)  The ALJ also noted Plaintiff's impairments of obesity, unspecified arthropathies, an upper respiratory infection, cellulitis, anxiety, and autism spectrum disorder were non-severe because they did not significantly limit Plaintiff's ability to perform basic work activities, and were managed with medications or treatment.  (AR 23 (citing, "for example," AR 518, 530–34).)  More specifically, the ALJ noted Plaintiff's anxiety and autism spectrum disorder do not appear to significantly limit Plaintiff; and Plaintiff's depression, OCD, and anxiety are characterized as being in remission (id. (citing, "for example," AR 371, 518, 531, 535, 579, 590, 592)).

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.920(d), 416.925, 416.926.)  As to Plaintiff's mental impairments, the ALJ applied the special technique for evaluating the severity of mental impairments by rating Plaintiff's level of impairment in the four functional areas under paragraph B (the "paragraph B criteria"), and found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of Listings 12.06 (anxiety and obsessive-compulsive disorders), 12.10 (Autism spectrum disorder), or 12.11 (neurodevelopmental disorders), because his mental impairments did not result in at least one

extreme or two marked limitations[8] out of the four broad areas of functioning.  (AR 24.)  More specifically:

(1) Plaintiff has a "moderate" limitation in "understanding, remembering, or applying information" because, while Plaintiff reports he needs reminders to take his medication and has some difficulty with short-term memory, the record documents FSIQ scores of 105, 85, and 79 (AR 24 (citing, "for example," AR 331–39, 476)); Plaintiff's memory was estimated to be in the average to low average range at the consultative examination (id. (citing, "for example," AR 477)); and, despite some difficulty, the majority of mental status examinations in the record stated Plaintiff's recent and remote memory was intact (id. (citing, "for example," AR 372, 374, 518, 520, 531, 536, 591)); and the mental status examinations in the record stated Plaintiff's fund of knowledge was age appropriate (id. (citing, "for example," AR 372, 374, 518, 591)).

(2) The ALJ found Plaintiff has a "moderate" limitation in "interacting with others" because, while Plaintiff reported it is difficult for him to be around people and his mother and sister described him as "socially isolated," the record noted Plaintiff gets along well with peers and adults (id. (citing, "for example," AR 483)); the majority of the mental status examinations in the record describe Plaintiff as "cooperative, polite, and friendly" (id. (citing, "for example," AR 372, 374, 474, 482, 518, 520, 531, 536, 591)); and Plaintiff testified at the hearing that he does have a few friends (id. (citing testimony)).

(3) The ALJ found Plaintiff has a "moderate" limitation in "concentrating, persisting, or maintaining pace" because, on the one hand, Plaintiff reported excessive worrying and difficulty sleeping—which would presumably affect his ability to concentrate, persist, and maintain pace— and the record noted Plaintiff's thought process was perseverative at times (id. (citing, "for example," AR 374, 288–89)); the examiner noted some difficulty staying engaged in the examination, and described Plaintiff as occasionally inattentive and distractible (id. (citing AR 474–75)); and Plaintiff's school records noted he had difficulty finishing assignments in school

---

[8] An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  See 20 C.F.R. §§ 404.1520a, 416.920a (describing ALJ's special technique for evaluating paragraph B criteria).

(id. (citing AR 482)).   However, despite these difficulties, the majority of mental status examinations in the record found Plaintiff's attention and concentration were within normal limits (id. (citing, "for example," AR 372, 374, 518, 520, 531, 536, 591)).

(4) Finally, the ALJ found Plaintiff has a "mild" limitation in "adapting or managing oneself" because, while Plaintiff reported some emotional outbursts, that he needs reminders at times to perform personal care, and that his mother helps with his finances (AR 25 (citing, "for example" AR 475)), the record indicates Plaintiff is routinely described as "well-groomed and appropriately dressed" (id. (citing, "for example," AR 372, 474, 518, 520, 531, 536, 591)); and he is noted to have fair judgment, insight, and impulse control in many of the mental status examinations in the record (id. (citing, "for example," AR 372, 374, 518)).

The ALJ also considered whether the "paragraph C" criteria were satisfied, and determined that they were not.  (Id.)  The ALJ reached this conclusion after reviewing Listing 12.06 and determining Plaintiff's medical record does not include any evidence of a "serious and persistent" depressive or anxiety-related disorder with evidence of medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder, with Plaintiff achieving only marginal adjustment, or minimal capacity to adapt to changes in the environment or to demands that are not already part of one's daily life.  (Id.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> **Plaintiff can understand, remember, and carry out simple routine tasks and instructions; he can have no more than occasional contact with the general public, coworkers, and supervisors; he is limited to no rapid-paced production quota-based work; and he can adapt to the demands of an informal work environment and would be able to deal with routine work stress.**

(AR 25 (citing 20 C.F.R. §§ 416.920c, 416.929, and SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff has no past relevant work.  (AR 28 (citing 20 C.F.R. § 416.965).)

8

At step five, the ALJ noted Plaintiff was born on May 2, 1999, and was 19 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 C.F.R. § 416.963); Plaintiff has at least a high school education (20 C.F.R. § 416.964); and transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 C.F.R. § 416.968).  (AR 28–29.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969, 416.969(a)), such as:

- <u>Parts Washer</u> (Dictionary of Occupational Titles ("DOT") 599.687-030), with approximately 125,000 jobs in the national economy;

- <u>Floor Cleaner</u> (DOT 381.687-034), with approximately 95,000 jobs in the national economy; and

- <u>Kitchen Helper</u> (DOT 318.687-010), with approximately 100,000 jobs in the national economy.

(<u>Id.</u>)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT.  (AR 29.)

Therefore, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act, since October 17, 2018, the date the application was filed.  (AR 29 (citing 20 C.F.R. § 416.920(g).)

## V.

## DISCUSSION

Plaintiff raises two issues on appeal: (1) the ALJ's "silent disregard" of lay witness testimony constitutes legal error; and (2) the ALJ erred in his evaluation of the medical opinion of consultant examiner Dr. Kurpiers.  (ECF No. 11 at 23–31.)  The Court shall address each argument in turn.

### A.      Lay Witness Testimony

Plaintiff argues the ALJ was required to provide "germane reasons" for discounting the lay witness testimony of Plaintiff's mother and sister (Ms. Quezada and Ms. Jones, respectively), but he failed to do so.  (ECF No. 11 at 23–26 (citing <u>Stout</u>, 454 F.3d at 1053).)  Further, Plaintiff

9

1    argues the Ninth Circuit has distinguished between the harmless error of failing to expressly

2    identify germane reasons for discounting lay witness testimony that was considered and

3    determined to be duplicative of a claimant's properly discounted testimony, from the harmful

4    error of failing to acknowledge the lay testimony at all, and instead "silently disregarding" it.  (Id.

5    (citing Stout, 454 F.3d at 1056; Molina v. Astrue, 674 F.3d 1104, 1115, 1122 (9th Cir. 2012),

6    superseded by regulation on other grounds).)  Here, Plaintiff argues the latter applies because the

7    ALJ "made *no mention* of the lay witness testimony whatsoever in [his] decision," thus, there is

8    no evidence that the statements were in fact considered by the ALJ.  (Id.; ECF No. 14 at 2–4

9    (citing Stout, 454 F.3d at 1053).)   Accordingly, Plaintiff argues the harmless error standard does

10   not apply in this case.

11          In opposition, Defendant does not dispute that the ALJ did not provide "germane reasons"

12   for rejecting the lay witness testimony.  Instead, Defendant argues Plaintiff relies on outdated

13   caselaw and that the ALJ was not required to address the lay witness testimony under the new

14   regulatory framework.[9]  As such, Defendant argues the lack of discussion regarding Ms. Quezada

15   and Ms. Jones's testimony did not amount to error.  (ECF No. 13 at 11–15.)   Alternatively,

16   Defendant argues the Court should uphold the ALJ's decision based on the harmless error

17   standard set forth in Molina, 674 F.3d at 1111, on the basis that the lay testimony is duplicative of

18   Plaintiff's own testimony regarding his purported impairments, which the ALJ properly

19   discounted with clear and convincing reasons based on substantial evidence in the record.  (ECF

20   No. 13 at 15–17.)

21          1.    Legal Standard

22          As Plaintiff notes, the Ninth Circuit has held that "[l]ay testimony as to a claimant's

23   symptoms is competent evidence that an ALJ must take into account, unless he or she expressly

24   determines to disregard such testimony and gives reasons germane to each witness for doing so."

25   Tobeler v. Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina, 674

26   F.3d at 1111.  In giving "germane reasons" for disregarding a lay witness's testimony, the ALJ

27
28   [9] The Court does note that neither party identifies any post-2017 Ninth Circuit caselaw directly addressing the issue
     of whether the "germane reasons" standard pertaining to the consideration of lay witness testimony is still applicable
     under the revised regulations, nor is this Court aware of a directly-on point case.

"generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (standard for evaluating opinion evidence for claims filed before Mar. 27, 2017); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (germane reasons must be specific).

Nevertheless, even if the ALJ fails to provide germane reasons for rejecting lay witness testimony, such error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  Tommasetti v. Astrue, 533 F.3d 1035, 1038  (9th Cir. 2008).  More specifically, the Ninth Circuit has held an ALJ's error in failing to explain his reasons for disregarding lay testimony is harmless where the reasons for rejecting a claimant's symptom testimony apply equally to third-party lay witness testimony. Molina, 674 F.3d at 1115; see also Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (approving ALJ's dismissal of daughters' lay testimony on the basis that they were merely repeating the claimant's statements, where daughters' statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother).  As the Court previously noted, Plaintiff bears the burden of showing that the error is not harmless.  Shinseki, 556 U.S. at 409.

However, the Ninth Circuit has cautioned that lay testimony "cannot be disregarded without comment."  Stout, 454 F.3d at 1053.  Specifically, the Ninth Circuit held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Id. at 1055–56.  Thus, the Ninth Circuit has refused to apply the harmless error standard where an ALJ failed to comment on lay testimony.  Id. at 1056.

11

Meanwhile, the new regulatory framework, which applies to claims filed, as here, after March 27, 2017, appears to be consistent with this Ninth Circuit principle.  That is, the revised regulations appear to hold the same requirement that lay witness testimony be *considered*.  In short, the revised regulations identify five categories of evidence: (1) objective evidence; (2) medical opinions; (3) "other" medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings.  20 C.F.R. § 416.913(a)(1)–(5).  Regulation 416.920c describes how the ALJ is required to consider and articulate medical opinions and prior administrative medical findings.  However, with respect to evidence from nonmedical sources—the category under which Plaintiff's lay testimony falls—the revised regulations expressly provide that the agency is "not required to articulate how we considered evidence from nonmedical sources using the requirements [set forth] in paragraphs (a) through (c) in this section."  20 C.F.R. § 416.920c(d).  Thus, as Defendant notes, the revised regulations distinguish between evidence the ALJ is required to "consider" and evidence that requires him to "articulate" how he considered that evidence.  Based on a plain reading of the revised regulations, the Court concludes the new regulatory framework requires an ALJ to *consider* lay testimony, but does not necessarily require him to articulate *how* he considered it.

Thus, the requirements under the new regulatory framework for discussing lay witness testimony appear strikingly similar to the requirements set forth under Ninth Circuit precedent for establishing the harmless error standard.  Accordingly, the Court's analysis under either the new regulatory framework advanced by Defendant or the "germane reasons"/harmless error standard presented by Plaintiff results in the same conclusion in the instant matter.[10]

---

[10] Because the Court reaches this conclusion, it need not reach Defendant's argument that the new regulatory framework "superseded" the Ninth Circuit's "germane reasons" requirement.  However, the Court does note that, in Lambert v. Saul, 980 F.3d 1266, 1273–76 (9th Cir. 2020), the Ninth Circuit relied on the Supreme Court's decision in Brand X to accord Chevron deference to the SSA's authoritative interpretation of the 1984 Reform Act as precluding any presumption of continuing disability, thus overturning the court's prior precedents on the issue of a presumption of continuing disability.  See id. at 1274 ("On various occasions, we have relied on the principle of Brand X to recognize that an agency's intervening interpretation of a statute commanded deference in the face of a contrary circuit precedent.") (citing Nat'l Cable & Telecomm'n Ass'n v. Brand X Internet Servs. (Brand X), 545 U.S. 967, 982 (2005) (holding "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision hold that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."); Chevron, U.S.A. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984)).  Furthermore, in the Ninth Circuit's April 22, 2022 ruling in Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022), it unambiguously acknowledged that the 2017 revised Social Security regulations

1    2.    Analysis

2        Here, the Court finds Plaintiff's first argument is unpersuasive because the ALJ did not

3    "silently disregard" the lay witness testimony.  Plaintiff's argument emphasizes that "the ALJ

4    made no mention of the lay witness testimony whatsoever in the ALJ's decision, [thus] there is no

5    evidence that the statements were in fact considered by the ALJ."  (ECF No. 14 at 2.)  Yet a

6    careful reading of the ALJ's decision reveals the ALJ did consider and discuss the lay testimony

7    of Ms. Quezada and Ms. Jones.  For example, the ALJ notes Plaintiff's mother and sister

8    described him as "socially isolated."  (AR 24 (citing to AR 476, which reports "[Plaintiff's] sister

9    and his mother describe him as socially isolated.").)  The ALJ also notes Ms. Quezada reported

10   Plaintiff had anger issues, irritability, a short attention span, and impulsiveness.  (AR 26.)  In

11   addition, the ALJ noted Ms. Jones reported Plaintiff has "some emotional outburst[s]."  (AR 25

12   (citing to AR 475, in which Ms. Jones, during her interview, reported that Plaintiff has emotional

13   outbursts).)  And perhaps most notably, in discounting the medical source statement of Dr.

14   Kurpiers—a point that Plaintiff expressly challenges—the ALJ discusses how Dr. Kurpiers's

15   opinion relied too heavily on the "subjective reports from [Plaintiff] and his sister" (AR 28); this,

16   too, demonstrates the ALJ considered the lay testimony.  Thus, the ALJ's references to statements

17   made by Ms. Quezada and Ms. Jones in his decision demonstrates that their testimony was

18   considered.  This comports with the new regulatory framework that requires an ALJ to consider

19   non-medical evidence or, alternatively, triggers the Ninth Circuit's harmless error standard, which

20   requires only that the record reflect the lay testimony was "commented on" and not "silently

21   disregarded."  20 C.F.R. § 416.920c(d); Stout, 454 F.3d at 1056.

22       Furthermore, the Court concludes any error in failing to expressly provide germane

23   reasons for discounting the lay testimony is harmless under the harmless error standard.  That is,

24   the Court finds the ALJ properly rejected the lay testimony because the third-party reports were

25   substantially similar to Plaintiff's symptom testimony, which the ALJ discounted for reasons

26   _____

     abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial

27   evidence in the record" for rejecting the opinion of a treating physician, as applied to Social Security claims filed
     after March 27, 2017.  Consistent with these rulings, it seems reasonable to conclude the Ninth Circuit's reasoning
     would similarly apply to the "germane reasons" standard that also pre-dates the revised regulations, to the extent it is

28   contradicted by the plain language of the new regulatory framework.

supported by substantial evidence in the record—reasons, notably, which Plaintiff has not challenged.[11] Molina, 674 F.3d at 1115; Valentine, 574 F.3d at 694; Lewis, 236 F.3d at 512; Dodrill, 12 F.3d at 918.

Instead, Plaintiff argues the lay testimony of his mother and sister is not duplicative of his own testimony, but differs in a number of important aspects that are relevant to consideration of the limitations caused by his impairments, such as: (1) both Ms. Quezada and Ms. Jones describe the level of supervision necessary for Plaintiff to complete simple household chores such as vacuuming, loading the dishwasher, and taking out the trash (AR 251 (Ms. Quezada reports she cannot leave Plaintiff alone to do the chore and must work alongside him because he needs "constant reminders and reinforcement"; she must tell him "step by step what to do repeatedly and he still gets distracted and loses track"); AR 296 (Ms. Jones states she needs to "stand there and direct [Plaintiff] and watch him" for Plaintiff to complete a household chore); and (2) Plaintiff argues that, in contrast to his testimony that he spends "20 to 30 minutes" doing these household chores, Ms. Quezada and Ms. Jones testified that it takes Plaintiff "hours" (AR 243, 251, 296).  (ECF No. 11 at 25; ECF No. 14 at 4–5.)  Plaintiff argues the lay testimony has heightened significance because the VE opined that no unskilled work would be available for an individual that was consistently off-task more than 10 percent of the workday or that could not maintain attention and concentration for the performance of simple tasks for a two-hour period. (ECF No. 11 at 25 (citing AR 70–71); ECF No. 14 at 5.)

But Defendant argues Plaintiff's distinctions between his own testimony and that of his mother and sister are superficial and therefore unavailing.  The Court is inclined to agree.  For example, while the parties give differing estimates as to *how long* it takes Plaintiff to complete his chores, the relevant import of the three accounts is the same: Plaintiff allegedly has difficultly focusing, requires supervision and direction, and he has a hard time finishing tasks timely.  (See AR 55–58, 67, 242–43, 249–52, 286, 288, 291, 294, 296.)  A review of the record reveals

---

[11] Importantly, any arguments not raised in the briefings are deemed waived.  See Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").  Therefore, it is undisputed that the ALJ properly rejected Plaintiff's symptom testimony for the reasons articulated in his decision.

1   Plaintiff's and the lay witnesses' testimony are substantially the same.  (Id.)

2          Further, the ALJ specifically addressed the allegedly debilitating lack of focus and

3   concentration in his decision, finding it to be inconsistent with the largely normal mental status

4   examinations and improvement with conservative treatment (AR 26–27).  On this basis, the ALJ

5   found an "off-task" limitation was unwarranted (though the Court notes the ALJ did provide

6   generous limitations in the RFC, including limiting Plaintiff to "simple routine tasks and

7   instructions" and "no rapid paced production quota based work" (AR 25)); thus, the VE's

8   statement that an individual who was "off-task more than 10 percent of the workday or that could

9   not maintain attention and concentration" could not work was not relevant to the RFC

10  determination, and Plaintiff's reliance on the VE's statement is unavailing.[12]

11         Finally, the Court notes it is undisputed that the ALJ properly discounted Plaintiff's

12  allegations of disabling symptoms based on multiple references to the record, as Plaintiff did not

13  challenge this determination.  Therefore, the lay testimony, which is duplicative of Plaintiff's own

14  testimony, may properly be rejected for the same reasons.  Accordingly, any error in failing to

15  ───────────────

16  [12] To this point, the Court additionally notes the Ninth Circuit has repeatedly held that a limitation to unskilled work, *i.e.*, "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of

17  time", 20 C.F.R. §§ 404.1568; 416.968, adequately encompasses a claimant's "moderate" mental RFC limitations. See, e.g., Thomas, 278 F.3d at 953, 955, 958 (if a job is unskilled, the tasks are very simple and may be performed by a claimant with "mild to moderate deficiencies of concentration"); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1169

18  (9th Cir. 2008) (limitation to "simple, routine, repetitive" tasks accommodates medical opinions that a claimant has a "slow pace" and "several moderate limitations in other mental areas."); Sabin v. Astrue, 337 Fed. App'x. 617, 620–

19  21 (9th Cir. 2009) (ALJ properly assessed medical evidence when determining—despite moderate difficulties as to concentration, persistence, or pace—the claimant could perform simple tasks on a consistent basis).  Here, the ALJ determined Plaintiff has "moderate" limitations with respect to the "B Criteria" broad functional areas of

20  "understanding, remembering or applying information" and "concentrating, persisting or maintaining pace."  (AR 24.)  It is perhaps worth noting that the regulations define a "moderate degree of mental limitation" to mean that

21  "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"; whereas, a "marked" impairment means "functioning in this area … is seriously limited"; and an "extreme" impairment means

22  the claimant is "[u]nable to function in this area independently."  20 C.F.R. §§ 404, Subpt. P, Appx. 1, 12.00.F.2.c, 12.00F.2.d (emphasis added); see also, e.g., Sandoval v. Berryhill, CIV 17-0641 JHR, 2018 WL 3429920 (D.N.M.

23  Jul. 16, 2018), at *7 (noting only "marked" impairment prevents any interaction; whereas limitation of "moderate to marked" denotes "abilities in these areas are limited, [but] they are not completely absent.").  Again, Plaintiff does

24  not challenge the ALJ's determination that his impairment/s with respect to these functional areas was "moderate."  Because it is undisputed that Plaintiff's impairments in the areas of understanding, remembering or applying

25  information and concentrating, persisting or maintaining pace are moderate, the ALJ did not err in declining to consider the alleged limitation of being "off-task more than 10 percent of the workday or [unable to] maintain

26  attention and concentration for the performance of simple tasks for a two-hour period" in the RFC determination.  Indeed, Plaintiff does not identify medical evidence in the record that supports this purported limitation.  At most,

27  Plaintiff may be relying on the opinion of Dr. Kurpiers for this alleged limitation; however, the Court finds the ALJ properly discounted Dr. Kurpiers's opinion for the reasons discussed herein.  Accordingly, the RFC limitations of

28  "simple routine tasks and instructions" and "no rapid paced production quota based work" sufficiently address Plaintiff's alleged impairment with respect to focus and concentration.

1   provide germane reasons for discounting Ms. Quezada and Ms. Jones's reports was harmless.

2   Molina, 674 F.3d at 1115; Valentine, 574 F.3d at 694; Lewis, 236 F.3d at 512

3          **B.      Evaluation of Dr. Kurpiers's Opinion**

4          Plaintiff argues the ALJ failed to identify substantial evidence from the record for finding

5   Dr. Kurpiers's opinion was not supported by or consistent with the record.  (ECF No. 11 at 26–

6   31.)

7          1.      Legal Standard

8          The Social Security Administration revised its regulations regarding the consideration of

9   medical evidence—applying those revisions to all claims filed after March 27, 2017.   See

10  Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg.

11  5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Because the instant

12  claims were filed after March 27, 2017, they are subject to the revised Social Security

13  Administration regulations.  Id.

14         Under the updated regulations, the agency "will not defer or give any specific evidentiary

15  weight, including controlling weight, to any medical opinion(s) or prior administrative medical

16  finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§

17  404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to

18  all medical sources when considering medical opinions, and no longer mandate particularized

19  procedures that the ALJ must follow in considering opinions from treating sources.  See 20

20  C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical

21  opinion or prior administrative medical finding from one medical source individually."); Trevizo

22  v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

23         Instead, "[w]hen a medical source provides one or more medical opinions or prior

24  administrative medical findings, [the ALJ] will consider those medical opinions or prior

25  administrative medical findings from that medical source together using" the following factors:

26  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

27  other factors that "tend to support or contradict a medical opinion or prior administrative medical

28  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  However, the ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

The "treating source rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  See, e.g., Trevizo, 871 F.3d at 675.  The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use.  See 20 C.F.R. §§ 404.1520c, 416.920c; Revisions, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–53 (eliminating "treating source rule").  As the Ninth Circuit has recently confirmed, this means the updated regulatory framework "eliminate[s] any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources," thus abrogating prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician, as applied to Social Security claims filed after March 27, 2017.  Woods, 32 F.4th at 789–792 (9th Cir. 2022); see also Jones v. Saul,

No. 2:10-cv-01273 AC, 2021 WL 620475, at *6–10 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to <u>Chevron</u> deference, and supersede prior caselaw "inconsistent with the new regulation"); <u>Meza v. Kijakazi</u>, No. 1:20-cv-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("[district] courts in this circuit have rejected the notion that the treating physician rule still pertains to claims filed after March 27, 2017").

Nonetheless, the new regulations still require the ALJ to explain his reasoning and to specifically address how he considered the supportability and consistency of the opinion.  20 C.F.R. §§ 404.1520c, 416.920c.  As the Ninth Circuit has commented, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings…."  <u>Woods</u>, 32 F.4th at 792; <u>see also</u> <u>P.H. v. Saul</u>, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.") (citation omitted).  As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.  <u>Ford</u>, 950 F.3d at 1154.  Indeed, the Court notes that, for example, where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.  <u>See</u> <u>Andrews</u>, 53 F.3d at 1041 (noting that inconsistency with independent clinical findings in the record is a specific and legitimate reason to reject a contradicted opinion of a treating physician).  Thus, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  <u>See</u> <u>Martinez V. v. Saul</u>, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

Further, as previously noted, it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Furthermore, where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679; Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017) ("As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence.").

2.     Dr. Elke Kurpiers's Medical Source Statement

Dr. Kurpiers conducted a psychological evaluation of Plaintiff on April 11, 2019.  (AR 473.)  She reviewed Plaintiff's records from Clovis and Porterville Unified School Districts, and a third-party function report completed by Plaintiff's mother (Ms. Quezada).

The Clovis records include a summary of academic achievement and functional performance, and an IEP dated November 2, 2017; Plaintiff's primary disability was listed as "Other Health Impairment" and secondary disability was listed as "none"; there was no mention of autism spectrum disorder.  Plaintiff was described as "struggles academically," and "ADHD affects his ability to meet grade level standards set forth in general education classrooms without the support of the Resource Program"; he was also described as "polite, friendly and respectful toward his teacher and peers, and caring towards others; his speech was described as "does not always use the correct sound(s) when conversing."

The Porterville records included a psycho-educational assessment report, and an IEP dated November 25, 2014.  A Wechsler Intelligence Scale for Children-4th Edition ("WISC-IV") intellectual testing resulted in a Full-Scale IQ ("FSIQ") score of 105 (average), Verbal

Comprehension index of 102 (average), Perceptual Reasoning index of 106 (average), Working Memory index of 123 (Superior), and Processing Speed index of 80 (low-average).  Academic Achievement testing (the Woodcock Johnson Test of Academic Achievement-3rd Edition ("WJ-III") suggested Plaintiff's academic achievement skills are "commensurate to his cognitive abilities."  Of these records, Dr. Kurpiers noted a screening tool for autism was administered because of Plaintiff's mother's concerns regarding autism, and the results suggested a diagnosis of Asperger's Disorder as "high or probable," but there was no follow up in this area and therefore no actual diagnosis.

In the function report filled out by Plaintiff's mother, Ms. Quezada described Plaintiff as having "difficulty with focusing/concentrating/remembering, defiant behavior, procrastination, isolating himself in his room, reminders needed for basic hygiene, being messy, always in a rush, distractible, avoids people, gets anxious around people, always worried and anxious, [and] poor coping skills."

Plaintiff arrived ten minutes late to the evaluation, with his sister (Ms. Jones) and her infant daughter.  Ms. Jones had driven Plaintiff to the appointment.  Dr. Kurpiers interviewed Plaintiff and Ms. Jones, and administered the Wechsler Adult Intelligence Scale-4th Edition ("WAIS-4") and the Wechsler Memory Scale-4th Edition ("WMS-4").

Ms. Jones reported Plaintiff used to have a diagnosis of Asperger's, now called Autism Disorder Spectrum; Dr. Kurpiers noted it was unclear where Plaintiff was reportedly diagnosed with Asperger's.  Ms. Jones reported Plaintiff had many tests performed a few years ago and "somebody came to the house to work with him," but she did not describe highly restricted and fixated interests; instead, she stated if Plaintiff is interested in something, it is only for a relatively short period, and then he loses interest and moves on to something else.  (AR 474.)  Ms. Jones also reported Plaintiff has emotional outbursts and he used to wash his hands excessively.  (AR 475.)  Ms. Jones reported it takes a lot to get Plaintiff to do anything, such as clean his room or do chores like taking out the trash.  Ms. Jones and Ms. Quezada described Plaintiff as "socially isolated."  (AR 476.)

At the evaluation, Plaintiff's chief complaint was "I have a hard time getting up in the

morning.  (AR 474.)  It's very difficult for me to be around people.  It stresses me out.  I get anxious very easily.  I constantly worry.  I'm easily stressed."  Plaintiff is single with no children.  He has always lived at home with his mother and 17-year-old brother.  He graduated from high school in 2018; he was in special education and his grades were "not the best."  Math was difficult for him.  He had speech therapy from 2nd to 7th grade.  At the time of the evaluation, Plaintiff was in his second semester at Clovis Community College; he was in a special program that was reportedly discontinued, but he continued to take three classes.  He described his first semester grades as "not that good," and his second semester grades as "so far, okay."  He was unable to identify any future goals; he has never been employed.  Plaintiff reported he was in individual and family therapy a few years ago; his family doctor prescribes Adderall for him, and he needs reminders to take his medication.  Plaintiff described his mood as "somewhat anxious" and described longstanding problems with anxiety, since age 14; Plaintiff reported he feels tense and nervous and worries a lot, especially at night, when his heart starts beating fast and he cannot sleep more than five to six hours; then he feels tired during the day and has low energy; he gets stressed out easily and gets very anxious around people; he gets angry and irritable; he attempted suicide at 15 or 16, but stated it was more to get attention than wanting to die.  (AR 475.)  Plaintiff reported when he is really stressed, he sees "stuff out of the corner of his eyes" and described himself as "paranoid, sometimes, … I overthink."  Plaintiff described his memory as "I can remember stuff from the past, but my short-term memory, if you tell me information, I forget."

Plaintiff reported the following activities: he gets up at different times, depending on when his classes start (9 a.m. or 12 noon); sometimes his mother drives him to the college, sometimes he takes a shuttle; he returns home by shuttle between 2 and 4 p.m.; at home he eats and takes a nap; sometimes he hangs out with his brother; sometimes he visits his sister with his brother; he can fix simple meals, such as quesadillas; he is independent in personal care but needs reminders for hygiene and grooming; he gets rides from his mother and sister and does not have a driver's license; the only place he goes by himself is a nearby store; his mother handles the "finances" and Plaintiff is given pocket money; he watches video games; he does not watch

television because there is no television in the house.  Plaintiff has a few friends, but does not see them on a regular basis; he stated, "I like my teachers and I talk to one of the students but only if I have to."  (AR 476.)  Plaintiff also reported he prefers to be alone.

On examination, Dr. Kurpiers observed Plaintiff presented with appropriate hygiene and grooming; eye contact was intermittent, "at [least] partly because he tended to move his head up and down"; there were no physical impairments; his attitude was generally cooperative but he had difficulties staying engaged and motivated; there was psychomotor restlessness; and he was fidgety.  (AR 474–76.)  Plaintiff's affect was decreased; his mood was anxious; and he seemed uncomfortable in the interpersonal situation; he answered questions but did not make any spontaneous comments or ask questions.  (AR 475–76.)  Plaintiff was coherent, with no evidence of psychosis.  (AR 475.)  He impressed as somewhat lethargic, was "oriented x 3"; his speech was often difficult to understand, with decreased articulation; he spoke with a low voice and tended to mumble and speak fast; he was inattentive and distractible.  Plaintiff's level of effort was "adequate"; he had no difficulty understanding and following test instructions; his work approach was slow and he yawned frequently—this increased over time—however, Dr. Kurpiers noted Plaintiff also reported he only slept three to four hours the night before.  (AR 476.)  Dr. Kurpiers did not find evidence of malingering; she also noted "the present test results are believed to be negatively affected by…" but this sentence cuts off like a typo in her report and does not identify anything.

Regarding the intellectual test results, Dr. Kurpiers noted similar verbal abilities (average range) between the 2014 WISC-IV and 2019 WAIS-4 tests; however, the 2019 test yielded significantly lower results than the 2014 test in the nonverbal abilities (low average versus average range)—a difference of 24 index points, which was deemed "statistically significant"; the 2019 test results also had a "statistically significant difference of 26 index points" in the working memory category; and processing speed was about equal (79 versus 80).  The resulting FSIQ for the 2019 test was 85, *i.e.*, 20 index points lower than the 2014 test; this was deemed "a statistically significant difference."  (AR 476.)  The 2019 WMS-4 memory test results were consistent with the 2019 WAIS-4 test; but memory was not assessed in 2014.  (AR 477.)  The

WMS-4 yielded results that Plaintiff's auditory memory is in the average range; visual (nonverbal) memory is in the borderline range; visual working memory is in the average range; immediate memory and delayed memory are in the low average range.

Dr. Kurpiers concluded Plaintiff was in special education with primary disability due to ADHD; there was no diagnosis of Autism or Asperger's.  (AR 478.)  The 2014 report described intellectual abilities within the normal range and did not find any discrepancy between intellectual abilities and academic achievement; whereas the 2017 IEP report stated Plaintiff's ADHD affected his ability to meet grade level standards without the support of the Resource Program, and Plaintiff's mother reported numerous concerns.  In particular, Dr. Kurpiers noted "[o]f interest is the discrepancy in behavior description in [Plaintiff's] 11/2017 IEP report and information provided by his sister and his mother.  As to the significant discrepancies between Plaintiff's 2014 and 2019 FSIQ testing, Dr. Kurpiers comments the discrepancies "might be due to differences in alertness, level of effort/motivation and the possibility that [Plaintiff's] ADHD symptoms were under better control in 2014 at the time of assessment."  Dr. Kurpiers further concluded Plaintiff does not appear capable of handling funds in his own best interests.  (AR 479.)

Dr. Kurpiers opined Plaintiff's behavior appears to differ depending on whether he is inside or outside his home; that Plaintiff appears to respond more appropriately to authority figures than to family; but that Plaintiff presented with symptoms that substantially interfere with his ability to function in important areas.  As to Plaintiff's functional limitations, Dr. Kurpiers opined Plaintiff has severe restrictions of daily activities; he has severe difficulties in maintaining social functioning and in the area of concentration, persistence, and pace; and that repeated episodes of emotional deterioration in work-like situations were anticipated if Plaintiff faced challenges that are beyond his abilities.  Dr. Kurpiers further opined Plaintiff has the ability to understand, remember, and follow basic instructions, but his ability to carry out instructions on a consistent basis is impaired; Plaintiff's ability to respond appropriately to coworkers, supervisors and the public is severely impaired, especially on a consistent basis and over time; his ability to respond appropriately to usual work situations is severely impaired; his ability to deal with

changes in a routine work setting is severely impaired; and he would benefit from counseling to

help him develop more effective coping skills and appropriate goals for his future.  (AR 479.)

### 3. The ALJ's Findings as to Dr. Kurpiers's Opinion

The ALJ found Dr. Kurpiers's opinion was "not persuasive" because:

> This opinion is not well supported by medically acceptable clinical findings and diagnostic techniques, it is inconsistent with other substantial evidence and the claimant's activities of daily living and it is conclusory and inconsistent with the treatment notes and examination findings. The limitations in this opinion are an overestimation of the claimant's limitations and are not consistent with the treatment notes from the claimant's doctor. For example, in May 2020, the treatment notes again stated that the claimant's ADHD symptoms were improved (11F/4). The mental status examination at this appointment noted that the claimant's attention and concentration were within normal limits and was otherwise normal (11F/4). Additionally, the test scores in this evaluation (WAIS IV Full Scale IQ of 85 per 7F/5) are of questionable validity due to the claimant['s] prior test scores; for example, the claimant's previous full scale IQ score from 2014 testing was 105 (1A/7; 1F). Further, this opinion appears based heavily on the claimant['s] subjective reports from the claimant and his sister.

(AR 28.)

### 4. Plaintiff's Arguments

In challenging the ALJ's findings as to Dr. Kurpiers's opinion, Plaintiff takes issue with the ALJ's finding that Dr. Kurpiers's opinion appears to be based heavily on Plaintiff and his sister's subjective reports, arguing instead that Dr. Kurpiers's findings were based on her own observations and testing results (ECF No. 11 at 29); Plaintiff argues the ALJ fails the identify the ADLs he considered as inconsistent with Dr. Kurpiers's opinion, and does not demonstrate how they are relevant to the workplace (id. at 29–30); Plaintiff argues the ALJ failed to address Dr. Kurpiers's explanation for the difference in his FSIQ test scores (105 from 2014 versus 85 more recently) (id. at 28–29 (citing AR 473, 478)); and Plaintiff takes issue with the ALJ's reference to "a single Progress Note," in which Dr. Chava noted Plaintiff's attention and concentration were within normal limits and his ADHD symptoms were improved (id. (citing AR 28, 531)).  As to this last point, Plaintiff argues the reference to a single progress note exemplifies cherry-picking from the longitudinal record that does not constitute substantial evidence.  Moreover, Plaintiff argues the ALJ ignored a subsequent email from Plaintiff to his doctor, in which Plaintiff states

1    he had not been reporting to Dr. Chava about his ongoing issues because he was trying to "push it

2    away" and had been trying to "deal with it on [his] own."  (Id. at 30 (citing AR 569).)  Finally,

3    Plaintiff argues the ALJ failed to consider the lay testimony reports of Plaintiff's functionality in

4    his consistency factor analysis of Dr. Kurpiers's report.  (Id. at 30–31.)

5        5.    Analysis

6        Here, the Court finds the ALJ adequately explained how he considered the supportability

7    and consistency factors relative to Dr. Kurpiers's opinion, and that the ALJ's reasoning is

8    supported by substantial evidence.  See Woods, 32 F.4th at 792 (holding an ALJ cannot reject an

9    examining or treating doctor's opinion as unsupported or inconsistent without providing an

10   explanation supported by substantial evidence); Martinez V., 2021 WL 1947238, at *3.

11       As to the supportability factor, the ALJ found Dr. Kurpiers's opinion was conclusory and

12   not supported by the medically acceptable clinical findings and diagnostic techniques; further, the

13   ALJ found the opinion relied too heavily on the subjective reports from Plaintiff and his sister.

14   (AR 28.)  The most obvious support for this finding appears on the face of Dr. Kurpiers's report

15   itself, in which she expressly notes the only records she reviewed to support her opinion were

16   Plaintiff's academic records from the Clovis and Porterville unified school districts and a

17   functional report written by his mother.  (AR 473.)  Notably, Plaintiff does not challenge the

18   ALJ's finding that Dr. Kurpiers's opinion was not supported by the medically acceptable clinical

19   findings and diagnostic techniques.  Instead, Plaintiff argues the ALJ fails to explain the basis for

20   his finding that Dr. Kurpiers relied heaving on the subjective testimony of Plaintiff and his sister;

21   but this finding is evident from the face of the report and opinion.

22       A plain review of Dr. Kurpiers's examination and opinion, which this Court has

23   comprehensively summarized supra, also appears to support the ALJ's finding.  That is, while Dr.

24   Kurpiers ultimately concludes Plaintiff has "severe" limitations with respect to ADLs, social

25   functioning, concentration, persistence, and pace, etc. (AR 479), her examination and review of

26   the record does not highlight objective medical evidentiary support; instead, the majority of Dr.

27   Kurpiers's report appears to consist of a recording of symptoms and history as reported to her by

28   Plaintiff and his sister, as well as certain statements made by Plaintiff's mother that were duly

recorded in Plaintiff's school records (see AR 473–76).

For example, the *entirety* of Dr. Kurpiers's mental status examination pertaining to Plaintiff's affect/mood, and the purported basis for her conclusion that Plaintiff's "affect was decreased.  His mood was anxious" is as follows:

> [Plaintiff] described his mood during the exam as "somewhat anxious."  He described longstanding problems with anxiety.  His anxiety started after he turned 14.  He did not know what might have caused the onset of anxiety but his sister stated that at the time he was living in an environment that was not good for him.  Subsequently he moved to Fresno but his anxiety remained.  He feels tense and nervous and worries a lot, especially at night.  At night his anxiety is so severe that his heart starts beating fast and he cannot sleep.  He gets stressed out easily and gets very anxious around people.  He gets angry and irritable but denied physical violence.  His sister reports that he has emotional outbursts.  She reports that medication was tried but it made him angry.  He denied suicidal ideation, plan or intent.   He reports a suicidal gesture/attempt when he was 15 or 16.  He admitted that it was more to get attention rather than wanting to die.  His sister reports that he used to wash his hands excessively.  This behavior has "mellowed down" but he still washes his hands more often than average.

(AR 475.)   There is zero reference in the opinion to prior medical reports (as, indeed, Dr. Kurpiers did not review any) to corroborate the anxiety/depression/angry outbursts reported by Plaintiff and his sister.  Dr. Kurpiers's summary of Plaintiff's school records also includes no reference to any of these symptoms; instead, she notes Plaintiff's school records describe him as "polite, friendly and respectful toward his teacher and peers, and caring towards others."  (AR 473.)  As Dr. Kurpiers notes, there is no mention of an autism spectrum disorder in Plaintiff's school records; nor do the records appear to note any anger management behavior incidents or OCD findings.  A review of the remainder of Dr. Kurpiers's findings, which purportedly support her conclusions of "severe" social, emotional, and cognitive impairments, similarly largely repeat the symptomology and medical history as reported to her by Plaintiff and his sister, rather than referencing any of Plaintiff's medical treatment notes, or describing direct observations based on specific testing that was conducted.  Thus, on its face, Dr. Kurpiers's report supports the ALJ's finding that Dr. Kurpiers's opinion was based heavily on Plaintiff's and his sister's subjective allegations but otherwise unsupported by the record.

As previously noted, the ALJ discounted Plaintiff's symptom testimony—which Plaintiff has not challenged—and he properly discounted Ms. Jones's testimony for the reasons previously discussed.  Therefore, the ALJ properly discounted Dr. Kurpiers's opinion, to the extent that it is based on her heavy reliance on Plaintiff and his sister's testimony.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion") (internal citation omitted); see also Chaudry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (finding ALJ properly discounted examiner's opinion that was "based primarily on [the claimant's] self-report of limitations"); Tommasetti, 533 F.3d at 1041.

Furthermore, it is significant that, in focusing on the ALJ's final reason for discounting Dr. Kurpiers's opinion (her reliance on subjective testimony), Plaintiff tends to ignore the ALJ's reasoning that the mostly unremarkable objective medical evidence in the record does not support Dr. Kurpiers's opinion regarding the severity of Plaintiff's symptoms, also discussed herein.[13]  As reasoned by the ALJ, Dr. Kurpiers's opinions are unsupported by medically acceptable clinical findings and diagnostic techniques including within her own notes.  For example, Dr. Kurpiers's mental status examination did not assess Plaintiff's ability to concentrate, but she opined he has severe limitations in concentration, persistence, and pace.  (Compare AR 474–77 with AR 479.)  Similarly, Dr. Kurpiers noted during the examination that Plaintiff demonstrated "no difficulty [with] understanding and following test instructions," yet she later opined that Plaintiff's ability

---

[13] In this respect, Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) is inapposite to the instant matter.  In Buck, the Ninth Circuit held a court should not reject a psychiatric opinion that is based *in part* on the patient's self-report, as well as on the clinician's observations, and objective measures such as a clinical interview and mental status evaluation.  Here, by contrast, the ALJ not only rejected Dr. Kurpiers's opinion because it relied *heavily* (rather than in part) upon Plaintiff's and his sister's allegations, but also because the opinion was internally inconsistent as well as inconsistent with Plaintiff's reported activities and the medical record, which is discussed in further detail herein.  See Christopher A. v. Berryhill, No. C18-5686-MAT (W.D. Wash. Apr. 24, 2019), 2019 WL 1787223, at *6 (distinguishing Buck where the ALJ specifically identified the doctor's reliance on self-reporting with regard to a measurable function (concentration), and was supported by substantial evidence in the record).  Inconsistency with the majority of objective medical evidence is an appropriate reason for rejecting a physician's opinion.  Batson, 359 F.3d at 1195.  Therefore, even if the ALJ's reference to Plaintiff's self-reports was error, it was harmless given the other sufficient reasons provided to discount Dr. Kurpiers's opinion.  See Molina, 674 F.3d at 1115 (finding error was harmless where ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record) (collecting cases).

1    to carry out instructions on a consistent basis is impaired.  (Compare AR 476 with AR 479.)  On

2    this basis, as well, the Court finds the ALJ has provided sufficient reason for rejecting Dr.

3    Kurpiers's conclusions.  See Ford, 950 F.3d at 1155 (noting an ALJ "is not required to take

4    medical opinions at face value, but may take into account the quality of the explanation when

5    determining how much weight to give a medical opinion" and finding the ALJ properly rejected

6    opinion that did not explain the bases of its conclusions); see also Bray v. Comm'r, Soc. Sec.

7    Admin, 554 F.3d 1219, 1228 (9th Cir. 2009) ("the ALJ need not accept the opinion of any

8    physician, including a treating physician, if that opinion is brief, conclusory and inadequately

9    supported by clinical findings.") (quotation and citation omitted); Thomas, 278 F.3d at 957

10   (same).

11         As to the inconsistency factor, the ALJ found Dr. Kurpiers's opinion overestimated

12   Plaintiff's limitations and was therefore inconsistent with the record of Plaintiff's activities of

13   daily living, the treatment notes, and examination findings.  As an example of inconsistencies

14   with the treatment notes, the ALJ points to a May 2020 treatment note, which states Plaintiff's

15   ADHD symptoms were improved.  This point was discussed in further detail earlier in the ALJ's

16   decision, in which he noted a progression of improvement in the longitudinal record: in July

17   2018, Plaintiff's treatment notes stated he had a good response to medication and his attention

18   and concentration were within normal limits (AR 27 (citing AR 373–74,)); in October 2018,

19   Plaintiff reported his ADHD symptoms had improved with medication[14] (id. (citing AR 372)); in

20   February, May, and November 2019, Plaintiff's treatment notes again stated Plaintiff's ADHD

21   had improved with medication (id. (citing AR 518, 520, 535)); in May 2020, the treatment note

22   indicates Plaintiff's ADHD symptoms improved and that his attention and concentration were

23   within normal limits and otherwise normal (id. (citing AR 531)); in July and August 2020, the

24   record also documents ongoing improvement with medication (id. (citing AR 573, 579)); finally,

25   the treatment note from Plaintiff's most recent appointment in October 2020 also states Plaintiff's

26   ADHD symptoms were improved (id. (AR 590)).  This finding, alone, constitutes a sufficient

27   ───────────────
     [14] The Court additionally notes the Ninth Circuit has held that "[i]mpairments that can be controlled effectively with
28   medication are not disabling for the purpose of determining eligibility for SSI benefits."  Warre v. Comm'r of Soc.
     Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

1   reason based on substantial evidence to discount Dr. Kurpiers's opinion.  See Andrews, 53 F.3d at

2   1041 (noting that inconsistency with independent clinical findings in the record is a specific and

3   legitimate reason to reject a contradicted opinion of a treating physician).

4       In challenging the ALJ's determination that Dr. Kurpiers's opinion was not persuasive,

5   much of Plaintiff's argument appears to be premised on the contention that the ALJ fails to

6   elaborate on or sufficiently cite to the longitudinal record in support of his various findings and

7   his reasons for rejecting Dr. Kurpiers's opinion were therefore conclusory.   Based on the

8   foregoing, the Court finds this premise unavailing.

9       As noted, the ALJ's findings and supporting references to the medical and non-medical

10  evidence are provided in greater detail throughout his decision, to support his findings that

11  Plaintiff's only severe impairment is his ADHD (see AR 23), that Plaintiff does not meet the

12  Category B criteria (see AR 24–25), and that Plaintiff's testimony regarding the intensity,

13  persistence, and limiting effects of his symptoms is not consistent with the medical evidence and

14  other evidence in the record (see AR 26–27)—findings which, importantly, Plaintiff has not

15  challenged.   As the ALJ clearly refers to these same findings during his discussion of Dr.

16  Kurpiers's opinion, pages later, he need not repeat every single citation to the record he

17  previously made.  Thus, when read within the context of his decision in its entirety, this Court

18  finds the ALJ's decision regarding Dr. Kurpiers's opinion clearly identifies multiple citations to

19  the record in support of his findings, which appear to fairly reflect the longitudinal history of

20  Plaintiff's records.   Indeed, the Court finds it somewhat ironic that Plaintiff cites to the

21  administrative record at page 28, paragraph 2, in justification of his argument that the ALJ

22  "cherry-picked" the record by only discussing "a single Progress Note" to reject Dr. Kurpiers's

23  opinion (ECF No. 11 at 30), yet Plaintiff ignores the remainder of the ALJ's decision—such as

24  pages 23, 24, 25, 26, and 27—which plainly supports the ALJ's finding that Dr. Kurpiers's

25  opinion is inconsistent with a medical record that documents largely normal mental status

26  examinations and shows Plaintiff's symptoms improved with treatment.

27      Plaintiff's remaining arguments are equally unavailing.  For example, Plaintiff's argument

28  that the ALJ does not identify the ADLs he considered relevant is belied at page 6 of the decision,

wherein the ALJ explains his reasoning for discounting Plaintiff's symptom testimony and his allegation that he is disabled due to his ADHD: the ALJ notes Plaintiff testified that he had an individual education plan ("IEP") for high school and was able to graduate, even though he "struggled with getting good grades"; that he is able to complete his personal hygiene activities on his own; that he attends community college and does not require "attendant services" there; that he goes out to get food with his friends; that he will do some chores; and that he can cook simple meals.  (AR 26.)  Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if they are not directly transferrable to a work setting.  See Molina, 674 F.3d at 1112–13 (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); Valentine, 574 F.3d at 693 (same); Ford, 950 F.3d at 1155 ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of treating source opinion of disabling limitations as inconsistent with the claimant's ability to perform daily and weekly activities); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").

Plaintiff's argument that the ALJ failed to address Dr. Kurpiers's review of his FSIQ score is also unavailing.  The ALJ questioned the validity of Plaintiff's 2019 FSIQ score, which even Dr. Kurpiers acknowledged represents a "statistically significant" index point drop from his 2014 scores, thus addressing the evidence.  (See AR 28.)  Dr. Kurpiers speculates, at one point in her report, that the extreme discrepancy "might be due to differences in alertness, level of effort/motivation and the possibility that his ADHD symptoms were under better control in 2014

at the time of assessment." (AR 478.) Plaintiff argues the ALJ erred in failing to directly address this comment. But the ALJ "need not discuss *all* evidence presented to [him]. Rather [he] must explain why 'significant probative evidence has been rejected.' " Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (emphasis in original) (affirming ALJ decision where "the evidence which the Secretary ignored was neither significant nor probative."); see also Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is not required to discuss every piece of evidence). The significant and probative piece of evidence here is Plaintiff's 2019 FSIQ scores, which the ALJ directly addressed: the ALJ rejected the 2019 scores as being "of questionable validity due to the claimant['s] prior test scores," which were significantly higher, and inconsistent with the majority of the record. (AR 28.) Dr. Kurpiers's comment as to the potential cause for the discrepancy—which was not part of her opinion, nor based on medical evidence in the record, but appears to be speculative—is deemed to be neither "significant nor probative." Vincent, 739 F.2d at 1394–95. As such, the ALJ did not err in declining to directly address it. Id.; Howard, 341 F.3d at 1012. Furthermore, as the Court has noted, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Morgan, 169 F.3d at 599; Drouin, 966 F.2d at 1258; Burch, 400 F.3d at 679; Shaibi, 883 F.3d at 1108.

At bottom, the Court finds it telling that Plaintiff does not meaningfully challenge the ALJ's finding that Dr. Kurpiers's opinion was inconsistent with the medical record. This includes the ALJ's finding that the majority of mental status examinations in the longitudinal record yielded results "within normal limits" (see AR 24–25), as previously noted; it also includes the ALJ's review of the other medical opinions. It is significant that the ALJ found the medical opinions of Drs. Lavasseaur and Collado (who opined Plaintiff's mental limitations ranged from mild to moderate), to be "somewhat persuasive" because they were supported by medically acceptable findings and laboratory diagnostic techniques, were consistent with the medical evidence, and because these doctors carefully analyzed the relationship between the impairments and the resulting limitations (an analysis not provided in Dr. Kurpiers's opinion). (AR 27.) It is equally significant that Dr. Kurpiers's opinion is starkly inconsistent with these opinions, but

Plaintiff neither challenges nor addresses the ALJ's evaluation of Drs. Lavasseaur and Collado's medical opinions.

In sum, the ALJ's analysis addressed the persuasiveness, including supportability and consistency of Dr. Kurpiers's opinion, and that analysis is supported by substantial evidence in the record.  See Robert S. v. Saul, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *5 (D. Or. Mar. 3, 2021), report and recommendation adopted, 2021 WL 1206576 (D. Or. Mar. 29, 2021).  To the extent Plaintiff has suggested an alternative interpretation of the evidence, this is not sufficient to establish reversible error and the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).  Accordingly, the Court finds the ALJ did not err in his evaluation of the medical opinions.

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 11) is DENIED; and

2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Alexander Christopher Neri and close this case.

IT IS SO ORDERED.

Dated:   **November 10, 2022**

_____
UNITED STATES MAGISTRATE JUDGE